IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| **RODNEY NELSON,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **Case No.:** |
| vs. ) | |
| ) | **JURY DEMAND** |
| **J & S CHEMICAL CORPORATION** ) | |
| ) | |
| **Defendant.** ) | |

## COMPLAINT

COMES NOW the Plaintiff in the above-styled case, Rodney Nelson, by and through her undersigned attorney, Richard R. Newton, and files this action against Defendant J & S Chemical Corporation.

This is an Federal Question, Employment Law, case arising out of Rodney Nelson's [Plaintiff] claim that his employer, J & S Chemical Corporation [J&S], a company, violated Title VII of the Civil Rights Act of 1964, as amended, (42 U.S.C. §2000e, *et seq*) by retaliating against Plaintiff for participating in a protected activity and for retaliating against Plaintiff for his association by marriage to Amber Nelson, who brought an EEOC Charge of Discrimination against her former employer, J&S. In support of Plaintiff's case, he would state unto the Court as follows:

JURISDICTION AND VENUE

1. Plaintiff brings this action under Federal Question Jurisdiction, 28 U.S.C. §1331, arising out of J & S violating Title VII of the Civil Rights Act of 1964, as amended [Title VII] (42 U.S.C. §2000e *et seq*; 42 U.S.C. §2000e-3(a); *Thompson v. N. Am. Stainless, LP*, 562 U.S. 170 (2011)) (association and protected act retaliation).

2. Venue is proper as *(a)* Plaintiff is a resident of Tuscaloosa County, Alabama; *(b)* J&S's principle place of business in Canton, Cherokee County, Georgia; and, *(c)* Plaintiff, as J&S's agent, primarily works out of Tuscaloosa County, Alabama. Both Plaintiff's residence and primary workplace are both situated in the United States District Court Northern District of Alabama, Southern Division.

3. Plaintiff filed his Equal Employment Opportunity Commission [EEOC] Charge of Discrimination with the Birmingham, Alabama, District Office on October 29, 2020, and, upon Plaintiff's request, on May 3, 2021, the EEOC issued a Notice of Right to Sue [NRTS]. A copy of Plaintiff's NRTS is attached hereto.

4. Plaintiff files this action within the 90-day tolling period, as required under Title VII.

PARTIES

5. Plaintiff Rodney Nelson is an adult over the age of nineteen (19) years of age who resides in Tuscaloosa County, Alabama.

6. Defendant J&S is a Georgia-based company, which which does business in the Northern District of Alabama and throughout the United States and the world. Its principle place of business is located in Canton, Cherokee County, Georgia.

STATEMENT OF FACTS

7. J&S is engaged in the business of manufacturing and sales of chemicals and compounds.

8. J&S employs 20 or more people.

9. J&S hired Plaintiff in or around September 2003, almost eighteen (18) years prior to the filing of this lawsuit.

10. Plaintiff's job title at J&S is Vice President of Sales and Marketing.

11. Plaintiff's direct supervisor is Tom Smith, J&S's Chief Executive Officer [CEO].

12. Thomas Smith is CEO Tom Smith's son and is J&S's Director of Global Sales and Marketing.

13. Thomas Smith also has supervisory and decision making authority over Plaintiff.

14. Along with other members of the Smith family who together own and operate J&S, Tom and Thomas primarily run the defendant company.

15. From Plaintiff's 2003 date of hire until in or around March 2020, Plaintiff had a reasonably good working relationship with Tom and Thomas Smith.

16. In 2012 J&S hired Plaintiff's wife, Amber Nelson, to be a J&S Sales representative.

17. In 2015 Amber Nelson became J&S's Southeastern U.S. Sales Manager.

18. Over his years of employment with J&S, Plaintiff has had to travel extensively as part of his work for J&S.

19. Over the years, Plaintiff's typical monthly work-related travel and other expenses ranged from around $2,000-$6,000.

20. As is a common practice within the industry, Plaintiff keeps track of his work-related travel and other expenses, submits those expenses to J&S, generally on a monthly basis, and J&S reimburses Plaintiff for his work-related expenses – often and typically within a matter of days of receipt of Plaintiff's expense reports.

21. J&S's practice of promptly paying Plaintiff for his monthly travel and other expenses ended in or around the late winter or early spring of 2020, causing Plaintiff financial hardship as well as causing him the anxiety of wondering if or when he was going to get reimbursed.

22. In or around September 2017, Plaintiff and J&S entered into a new, updated, employment agreement which, in pertinent part, continued a 2015 employment

agreement between the parties in which J&S agreed to pay Plaintiff both a salary and certain sales commissions.

23.  Both prior to and following the 2017 agreement, J&S paid quarterly sales commissions to Plaintiff.

24.  Typically, J&S paid Plaintiff a quarterly commission of $15,000.00, more or less.

25.  Although Plaintiff discovered that many, if not most, if not all, of the sales commissions-paid were actually short of what J&S actually owed him, J&S had established a track-record of paying Plaintiff quarterly commissions with regularity.

26.  At the end of the first quarter of 2020, that is, at the end of March / first of April 2020, J&S did not pay any commission to Plaintiff.

27.  Neither did J&S pay Plaintiff any commission at the end of the second quarter of 2020. Neither did J&S pay Plaintiff any commission at the end of the third or fourth quarter of 2020.

28.  In or around the spring of 2021, J&S paid around $2,500.00 to Plaintiff, possibly as a "commission," but the company did not designated what the payment was for. Even if a "commission," the payment falls significantly short of what J&S owes Plaintiff for all the commissions it failed or refused to pay beginning with the never-paid first quarter 2020 commission.

29.  J&S's refusing to pay Plaintiff quarterly commissions since the spring of 2020 has caused him to suffer financially.

30.  Over the course of Plaintiff's work-history at J&S, up until the late winter and early spring of 2020, Plaintiff and his supervisors, principally Tom Smith, generally cooperated and worked reasonably well together regarding scheduling and keeping track of Plaintiff's business trips for J&S, which aided in Plaintiff being able to do his job.

31.  Over the course of Plaintiff's work-history at J&S, up until the late winter and early spring of 2020, Plaintiff and his supervisors, principally Tom Smith, generally cooperated and worked reasonably well together regarding scheduling J&S company meetings (whether face-to-face, telephonically, etc.) between Plaintiff and J&S's decision makers, principally Tom Smith, which aided in Plaintiff being able to do his job.

**Amber Nelson's EEOC Charge**

32.  On or about February 28, 2020, in a conference call with Thomas Smith and Michael Smith (J&S's Finance Director and member of the Smith Family), Thomas fired Amber Nelson for "performance," when, in fact, her sales track-record was excellent.

33.  Amber saw she was on the receiving end of workplace sex discrimination, given her strong sales performance coupled with J&S's hackneyed pretext for firing her.

34. On March 9, 2020, Amber Nelson filed an EEOC Charge of Discrimination

for sex discrimination, which was eventually resolved with finality.

35. On March 10, 2020, Tom and Michael Smith received an email copy of Amber Nelson's EEOC Charge.

**J&S Retaliation**

36. Within about four (4) weeks of Tom and Michael Smith receiving copies of Amber Nelson's EEOC Charge, Plaintiff discovered that Tom and Thomas Smith had in the interim provided other sales representatives J&S product information, cutting Plaintiff out of the loop, and that Thomas was contacting Plaintiff's customer's directly, offering and selling one or more J&S products. To Plaintiff's knowledge, this had never occurred before Amber Nelson filed her EEOC Charge.

37. Thomas's contacting and selling products directly to customers with whom Plaintiff had had long-established relationships undermined Plaintiff's ability to work effectively.

38. In the several weeks following their receipt of Amber Nelson's EEOC Charge Tom and Thomas Smith refused to provide, then ignored or dismissed Plaintiff's repeated requests *to* provide him with proper product information needed and required by one or more customers (e.g., product pricing, safety data sheets, technical data).

39. Acting as J&S agents, executives, decision makers and Plaintiff's supervisors,

Tom and Thomas Smith's aforementioned acts and omissions carried out in the immediate wake of their receiving Amber Nelson's EEOC Charge caused Plaintiff extreme embarrassment regarding one or more J&S customers he had long served and denigrated his reputation in the industry. Additionally, these J&S and/or J&S ratified acts and omissions took commission revenue from Plaintiff.

40. Plaintiff here reiterates the sum and substance of the foregoing Paragraph No. 22-27, that is, following years of paying Plaintiff regular quarterly commissions, J&S stopped paying those commissions to Plaintiff beginning with the first quarter / end of March 2020 commission – due to be paid just 3 weeks (plus/minus) after J&S's Tom Smith and Michael Smith received their copy of Amber Nelson's EEOC Charge of Discrimination. As of July 2021, the retaliatory withholding of commission payment / revenues from Plaintiff continues.

**Plaintiff Participates in a Protected Activity**

41.  On or about April 29, 2020, an attorney acting on behalf of J&S contacted Plaintiff's personal attorney in Tuscaloosa, Alabama, providing Plaintiff's lawyer with questions regarding Amber Nelson and requesting Plaintiff answer same as part of J&S's "investigation" of Amber's EEOC Charge and her allegations made therein. Plaintiff's lawyer assured J&S's lawyer that Plaintiff would participate in the investigation.

42. Plaintiff participated in this investigation, answered J&S's lawyer's questions thoroughly, and even gathered documents to assist J&S's investigation of Amber's EEOC Charge allegations.

43. On or around May 8, 2020, Plaintiff's personal lawyer forwarded Plaintiff's answers and documents to J&S.

44. Plaintiff's participation in J&S's investigation of Amber's EEOC Charge allegations was a protected activity under Title VII of the Civil Rights Act of 1964, as amended.

**More J&S Retaliation**

45. Within days of Plaintiff's personal lawyer assuring J&S that Plaintiff would participate in the aforementioned EEOC Charge investigation – and while Plaintiff was working on his answers to J&S's investigation questions – Tom Smith directed Plaintiff provide him a "travel schedule" for the remainder of 2020, that is, a detailed schedule of business trips for the coming more-than-half-a-year. Then, within less than a week, Tom Smith emailed Plaintiff and again demanded such a travel schedule by the next day.

46. In his almost 17 years employment with J&S, and 30-plus years in the industry, Plaintiff had never received or been saddled with such a directive / demand.

47. Tom Smith's directive was preposterous, unreasonable and an impossible task, intended to impinge on Plaintiff's workload, cause Plaintiff workplace frustration, set up

Plaintiff to fail, and retaliate against Plaintiff for working on, then providing, good faith answers to J&S's questions regarding Amber's EEOC Charge.

48. Tom Smith and his J&S family allies hoped Plaintiff would not cooperate, would refuse to participate, in J&S's "investigation" of Amber's EEOC Charge, in order to give J&S an excuse to fire Plaintiff.

49. Within about the same time frame, as Plaintiff was participating in J&S's aforementioned EEOC Charge investigation, Tom Smith demanded Plaintiff provide a revised customer revenue forecast for the remainder of 2020. This was unreasonable "make work" created to unduly burden and frustrate Plaintiff and impinge on his ability to do his job. In his then-almost 17 years working for J&S Plaintiff had never been saddled with such a thing.

50. Beginning in the weeks following Tom and Michael Smith's receiving Amber Nelson's March 2020 EEOC Charge, and continuing to date, J&S stopped timely expense payments / reimbursements to Plaintiff, breaking with its years-long pattern of making quick and timely reimbursements to Plaintiff upon J&S's receipt of his expense reports.

51. J&S's retaliation is ongoing, with Tom Smith's hectoring Plaintiff about company meetings, demanding Plaintiff attend this or that meeting per Tom Smith's caprice, in a sharp and years-long J&S history of working cooperatively and

professionally with Plaintiff to coordinate schedules, as well as J&S's years' of willingness to conduct meetings telephonically or otherwise. This is no small or trivial matter, as arranging meetings between Tuscaloosa, Alabama, and Canton, Georgia, can be challenging and impact on both Plaintiff's workload, his own scheduling, and personal, family time. Up until the spring of 2020, it had always been a challenge met with good faith, cooperation and collaboration by J&S and Tom Smith in particular.

52. The retaliation detailed above began within temporal proximity – days, weeks – of Plaintiff's wife, Amber, filing an EEOC Charge of Discrimination against J&S and/or Plaintiff participating in the protected activity of participating in J&S's investigation of Amber's EEOC Charge allegations.

53. Plaintiff and Amber are within one another's "zone of interest" for purposes of Title VII association retaliation.

54. The various employer acts perpetrated against Plaintiff are objectively retaliatory, not only in their nature, but also when set against the fact that over the course of Plaintiff's long career at J&S, he had never suffered nor otherwise had to endure such things at the hands of J&S.

55. J&S's past and ongoing retaliatory acts against Plaintiff are of such a nature and scope as to cause a reasonable employee to refrain from filing or supporting an EEOC Charge of Discrimination, or from participating in a protected activity – such as

in an investigation – as defined and interpreted under Title VII.

## COUNT I

### Title VII – Association Retaliation

56.  By this reference Plaintiff reiterates and incorporates the allegations set forth in the preceding paragraphs as if fully set out herein.

57.  Plaintiff was and is married to Amber Nelson, who was an employee fired by J&S and who filed an EEOC Charge of Discrimination in the wake of that firing.

58.  J&S retaliated against Plaintiff owing to his association with Amber Nelson.

59. The retaliation (detailed in this Complaint) began within days or weeks of J&S having actual knowledge of Amber's EEOC Charge.

60. The retaliation has caused Plaintiff loss of income, stress, anxiety and has impacted on his ability to do his work.

61.  The retaliation is such as would dissuade a reasonable employee from filing or supporting an EEOC Charge of Discrimination or otherwise asserting their rights under Title VII.

62.  Defendant J&S willfully violated Title VII's prohibition on association retaliation and is liable to Plaintiff for damages, including, but not limited to, loss of income, benefits, stress, and any / all other damages proximately caused by said retaliation and Title VII violation/s.

## COUNT II

Title VII – Retaliation for Participation in a Protected Act

63.  By this reference Plaintiff reiterates and incorporates the allegations set forth in the preceding paragraphs as if fully set out herein.

64.  Plaintiff participated in an protected act as defined by Title VII and case law, to wit:  cooperating in an employer investigation of another (former) employee's EEOC Charge of Discrimination.

65.  Defendant J&S's retaliation was temporally proximate to Plaintiff's protected act/s.

66. J&S willfully violated Title VII by retaliating against Plaintiff, proximately causing harm and damages, including, but not limited to, loss of income, benefits, stress, frustration of his ability to do his job, other damages.

67.  J&S is liable to Plaintiff under Title VII for said damages.

## REQUEST FOR RELIEF

NOW, WHEREFORE, regarding Counts I and II above, Plaintiff respectfully requests the following relief after trial of this case by struck jury:

A.  Entry of judgment in Plaintiff's favor and against Defendant for lost income and benefits.

B. Entry of judgment in Plaintiff's favor and against Defendant for liquidated damages.

C. Entry of judgment in Plaintiff's favor for the stress, frustration and mental anguish suffered, proximately caused by Defendant's retaliation.

D. Injunctive relief in the form of an Order requiring Defendant to (i) re-visit and update its discrimination policies and, (ii) retrain directors, officers, its Human Resources officer and all employees and staff regarding Title VII and related employment discrimination laws.

E. Reasonable attorney's costs and fees.

F. Any and all other relief at law or equity to which Plaintiff is entitled.

Respectfully filed on this, the 8th day of July, 2021.

_____
Richard R. Newton,
 Attorney at Law, P.C.
Counsel for Plaintiff
1203 Regal Avenue
Birmingham, AL  35213
Tel:  (205) 356-2498
richardrussellnewton@gmail.com
ASB-0776-w85r

**Served on:**

An Officer or Agent of J&S Chemical Corporation
170 N Industrial Way
Canton, GA 30115